FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 05, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ISAIAH D.[1],

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

No.    4:18-CV-05172-EFS

**ORDER GRANTING
DEFENDANT'S SUMMARY
JUDGMENT MOTION AND
DENYING PLAINTIFF'S
SUMMARY JUDGMENT MOTION**

Before the Court are the parties' cross motions for summary judgment, ECF Nos. 11 & 12. Plaintiff Isaiah D. appeals a denial of benefits by the Administrative Law Judge (ALJ).[2] Plaintiff contends the ALJ: (1) did not provide germane reasons for rejecting the lay witness testimony of Plaintiff's teachers Tina Gore and Mary Straub Walden; (2) failed to provide legally sufficient reasons for rejecting medical expert Nancy Winfrey, M.D. and state agency psychological consultants; (3) improperly rejected lay witness testimony of Plaintiff's mother; and

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.

[2] ECF No. 11.

(4) erroneously concluded that Plaintiff's attention deficit hyperactivity disorder (ADHD) and learning disorders did not equal a listed impairment.[3] The Commissioner of Social Security (Commissioner) asks the Court to affirm the ALJ's decision finding Plaintiff not disabled.[4]

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court grants the Commissioner's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## I. PROCEDURAL HISTORY[5]

Plaintiff was born January 14, 2000.[6] On September 3, 2013, Plaintiff's mother protectively filed an application for supplemental security income (SSI) on Plaintiff's behalf, alleging a disability onset date of January 1, 2006.[7] The application was denied initially on February 3, 2014, and upon reconsideration.[8] Plaintiff requested a hearing on June 26, 2014.[9]

A hearing was held before ALJ Laura Valente in Kennewick, Washington on April 22, 2016.[10] However, one of the impartial medical experts decided at the April 22 hearing that he did not have enough information to testify.[11] Accordingly, the ALJ continued the hearing.[12] In the interim, the expert obtained additional

---

[3]   ECF No. 11 at 1.
[4]   *See generally* ECF No. 12.
[5]   The facts are only briefly summarized.  Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.
[6]   Administrative Record (AR) 35.
[7]   AR 32.
[8]   *Id.*
[9]   *Id.*
[10]  *Id.*
[11]  *Id.*
[12]  AR 32.

medical evidence and updated school records.[13] The ALJ also sent Plaintiff for a psychodiagnostics evaluation, which was performed in June 2016.[14] The supplemental hearing occurred on November 1, 2016.[15]

In a decision dated April 20, 2017, the ALJ found Plaintiff's severe impairments included: adjustment disorder, learning disorder, and ADHD.[16] The ALJ found that Plaintiff's impairments did not meet or equal a listing.[17] The ALJ went on to determine that Plaintiff did not have "marked limitation" in any major functional areas.[18] As such, the ALJ denied Plaintiff's claims.[19]

On April 23, 2018, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final.[20] On October 31, 2018, Plaintiff filed this lawsuit appealing the ALJ's decision.[21] The parties subsequently filed the instant summary judgment motions.[22]

## II. THREE-STEP PROCESS FOR CHILD DISABILITY

A child under the age of 18[23] is disabled within the meaning of the Social Security Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] AR 35.
[17] AR 36.
[18] AR 39–47.
[19] AR 47.
[20] AR 1.
[21] ECF No. 1.
[22] ECF Nos. 11 & 12.
[23] Although Plaintiff is currently over the age of 18, he was a minor during the relevant period in question.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[24] The regulations provide a three-step process to determine whether a claimant satisfies this criterion.[25] First, the ALJ must determine whether the child is engaged in substantial gainful activity.[26] Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations."[27] Third, if the ALJ finds a severe impairment, the ALJ must then consider whether the impairment either "medically equals" or "functionally equals" a listed disability.[28]

At the third step, if the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must still determine whether the impairment or combination of impairments functionally equals a listing.[29] The ALJ's functional equivalence assessment requires the ALJ to evaluate the child's functioning in six "domains."[30] These six domains are designed "to capture all of what a child can or cannot do," and are as follows:

    (1)    Acquiring and using information;
    (2)    Attending and completing tasks;
    (3)    Interacting and relating with others;
    (4)    Moving about and manipulating objects;
    (5)    Caring for self; and
    (6)    Health and physical well-being.[31]

---

[24]    42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906.
[25]    20 C.F.R. § 416.924(a).
[26]    20 C.F.R. § 416.924(b).
[27]    20 C.F.R. § 416.924(c).
[28]    20 C.F.R. § 416.924(d).
[29]    20 C.F.R. § 416.926a(a).
[30]    20 C.F.R. § 416.926a(b)(1).
[31]    20 C.F.R. § 416.926a(b)(1)(i)–(vi).

A child's impairment will be deemed to functionally equal a listed impairment if his condition results in "marked" limitations in at least two domains, or an "extreme" limitation in at least one domain.[32] A "marked limitation" is present in a domain if the child's impairment "interferes seriously with [his] ability to independently initiate, sustain, or complete activities."[33] By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [his] ability to independently initiate, sustain, or complete activities."[34]

## III.  **ALJ DECISION**

At the first step in this case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since applying for disability on September 3, 2013.[35] At the second step, the ALJ found that Plaintiff had the "severe impairments" of adjustment disorder, learning disorder, and attention deficit hyperactivity disorder (ADHD).[36]  At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.[37] The ALJ reasoned that "[n]o physician of record opined that [Plaintiff's] impairments met or medically equaled any listing."[38] Further, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning

[32]   20 C.F.R. § 416.926a(d).
[33]   20 C.F.R. § 416.926a(e)(2)(i).
[34]   20 C.F.R. § 416.926a(e)(3)(i).
[35]   AR 35.
[36]   *Id.*
[37]   AR 36.
[38]   *Id.*

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"[39]

In arriving at this conclusion, the ALJ gave great weight to non-treating medical expert Joseph M. Steiner, Ph.D.[40] The ALJ reasoned that Dr. Steiner was the only medical source who had reviewed the entire record and his testimony was impartial and well-reasoned.[41] The ALJ assigned "some/partial" weight to treating physician Dr. Glenn Ello and examining physician Nora K. Marks, Ph.D.[42]

The ALJ assigned "little" weight to state agency psychological consultants Beth Fitterer and Grant Gilbert, Ph.D.[43] The ALJ reasoned that their "assessment of the evidence and domain ratings were in concert with" Dr. Steiner's opinion, "except they indicated 'marked' limitations in acquiring and using information and 'no' limitations in caring for himself, ratings not consistent with the evidence of record."[44] Further, the ALJ stated that the medical and school evidence was inconsistent with these opinions, and the consultants did not consider evidence after 2014.[45] Additionally, the ALJ assigned little weight to interrogatories completed by Nancy Winfrey, Ph.D., because her opinions were not supported by objective testing and "appeared to be more based on speculation than the evidence of record."[46]

---

[39] AR 37.
[40] *Id.*
[41] AR 37–38.
[42] AR 38.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] AR 39.

The ALJ also assigned little weight to Plaintiff's middle school teachers Tina Gore and Mary Straub Walden.[47] The ALJ reasoned that Ms. Gore's demarcation of "extreme" and "marked" limitations in multiple domains "was wholly inconsistent" with her own earlier assessment, which rendered "her questionnaires unpersuasive."[48] Further, the ALJ reasoned that the domain ratings from both Ms. Gore and Ms. Walden were "more severe than [Plaintiff's] objective test results, contradictory to his records and IEP reports, . . . and out of proportion to the allegations of [Plaintiff] and his mother."[49]

Finally, the ALJ assigned little weight to Plaintiff's mother, Sonia Portales.[50] The ALJ reasoned that although Ms. Portales had observed Plaintiff on a regular basis, she was not a medical professional and the limitations she alleged were "not entirely consistent with clinical observations of medical professionals."[51] The ALJ further stated that Ms. Portales' allegations were "out of proportion to medical source evidence, and [Plaintiff's] own testimony."[52]

## IV.    STANDARD OF REVIEW

This Court will reverse an ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard.[53] Substantial evidence is "more than a mere scintilla but less than a

---

[47] AR 38.
[48] *Id.*
[49] AR 38–39.
[50] AR 37.
[51] *Id.*
[52] *Id.*
[53] *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[54]

It is the role of the ALJ, not this Court, to weigh conflicting evidence and make credibility assessments. If the evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.[55] The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence."[56] However, if the ALJ applied an incorrect legal standard in weighing the evidence and arriving at his decision, the Court will reverse unless the error was harmless.[57]

## V.    DISCUSSION

### A.  The ALJ did not err in concluding that Plaintiff's ADHD and learning disorders do not functionally equal a listed impairment.

Plaintiff argues that the ALJ erroneously concluded that Plaintiff had "less than marked" limitations in the domains of "acquiring and using information" and "attending and completing tasks."[58] The ALJ concluded that Plaintiff had "less than marked" limitations in all domains, thereby rendering him not disabled.[59]

The Court finds substantial evidence exists to support the ALJ's conclusions. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such

---

[54] *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).
[55] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[56] *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
[57] *See Molina*, 674 F.3d at 1111.
[58] ECF No. 11 at 20.
[59] AR 40–47; 20 C.F.R. § 416.926a(d) (a child's impairment will equal a listed impairment if his condition results in "marked" limitations in at least two domains or "extreme" limitations in at least one domain).

evidentiary sufficiency is not high . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[60]

### i. *Acquiring and Using Information*

In this domain, an ALJ assesses "how well [the claimant] acquire[s] or learn[s] information, and how well [he] use[s] the information [he has] learned."[61] A claimant may present limited functioning in acquiring and using information if he (1) does not demonstrate understanding of words about space, time or size; (2) cannot rhyme words or sounds in words; (3) has difficulty recalling important things he learned in school yesterday; (4) has difficulty solving mathematics questions or computing arithmetic answers; or (5) speaks only in short, simple sentences and has difficulty explaining what he means.[62] An adolescent who acquires and uses information in a typical manner is generally able to demonstrate—among other factors—learning in academic assignments; apply learning in daily situations without assistance (such as going to the store, getting a book from the library, or using public transportation); and apply knowledge in practical ways that will help in employment, such as carrying out instructions.[63]

Plaintiff generally asserts that the ALJ erred because Plaintiff's lay witnesses, the state psychological consultants, and Dr. Winfrey concluded that Plaintiff had "marked" limitations in this domain.[64] However, as discussed *infra*, the

---

[60] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).
[61] 20 C.F.R. §416.926a(g).
[62] 20 C.F.R. § 416.926a(g)(3)(i)–(v). These factors are examples of limited functioning. *Id.*
[63] 20 C.F.R. § 416.926a(g)(2)(v); *see also* SSR 09-3p.
[64] ECF No. 11 at 20.

ALJ properly afforded little weight to the opinions of these witnesses. Further, substantial evidence supports the ALJ's findings that Plaintiff has "less than marked" limitations in acquiring and using information. Plaintiff's treating physician Dr. Glenn Ello opined that Plaintiff had "less then marked" limitations in acquiring and using information, and that medication would enable Plaintiff to focus better.[65] Dr. Marks' objective testing for intelligence and achievement showed Plaintiff is able to follow and carry out instructions with repetition.[66] Plaintiff's IEP form dated December 2014 supports Dr. Marks' findings, stating that Plaintiff "works hard and is eager to understand all of the instruction he is given."[67] The form further states that Plaintiff "catches onto new academic skills quite well," and he retains "new material and skills" through significant repetition.[68]

Dr. Marks' testing also showed Plaintiff had a full-scale IQ score in the low-average range with some borderline range scores, which medical expert Dr. Joseph Steiner opined did not reach the level of "marked" limitations.[69] Although Plaintiff believes Dr. Steiner relied "almost solely" on the intelligence testing, Dr. Steiner also relied on Dr. Ello's testimony and Plaintiff's most recent school transcript, which

---

[65] AR 511. Plaintiff contends that the ALJ erred by relying on Dr. Ello's opinion to the extent it only assessed his disability from his ADHD. ECF No. 11 at 16–17. However, as discussed *infra*, substantial evidence in the record that also accounted for his learning and adjustment disorders supported Dr. Ello's findings.

[66] *See* AR 521. Dr. Marks wrote that Plaintiff "may have difficulty if instructions become complicated and multistepped," but he "should not have difficulty understanding problems with small step application in a routine setting." *Id.* The ALJ noted that Dr. Marks did not assess the specific domains in her report and accounted for this when assigning weight to her findings. *See* AR 38.

[67] AR 407.

[68] *Id.*

[69] AR 91.

reflected "A's and B's."[70] Further, Dr. Steiner was the only medical expert to review the record in this case in its entirety.[71] Therefore, Dr. Steiner reviewed the testing and issued his conclusion in light of all other evidence in the record.

The record also reflects Plaintiff's "less than marked" ability to apply learning in daily situations without assistance.[72] Plaintiff stated that he enjoys going to the library and reading novels and comic books.[73] He is comfortable finding what he needs at the library and asking for help when he cannot.[74] Further, Plaintiff stated in the hearing that he could ride his bicycle around the neighborhood when it was functional and believes he could use public transportation, although he stated he generally goes places with his mother for fear of his safety.[75] Additionally, Plaintiff's mother admitted that Plaintiff has no problems understanding the rules of baseball and is able to learn new things on a daily basis.[76]

Plaintiff's remaining arguments lack merit. Plaintiff asserts that the ALJ disregarded the Woodcock Johnson-III[77] test results demonstrating Plaintiff's skills in comparison to his age group, as well as the modifications he received in his IEP program.[78] However, the ALJ specifically cited to the records containing the

---

[70] *See* AR 91–92; *see also* AR 359 (transcript dated March 3, 2016).
[71] *See* AR 37.
[72] *See* SSR 09-3 (an adolescent between ages 12 and 18 may demonstrate typical acquisition and use of information through daily application of skills, to include going to the store, using public transportation, or acquiring a book from the library).
[73] AR 120.
[74] *Id.*
[75] AR 109–10.
[76] AR 97.
[77] Although Plaintiff uses the term "objective testing," ECF No. 11 at 20, he discusses these results as being the "Woodcock-Johnson III" results earlier in the pleading and cites to the same page numbers. *See, e.g.*, *id.* at 7. The Court accordingly assumes that Plaintiff is referring to those test results here.
[78] ECF No. 11 at 20.

Woodcock Johnson-III test results when assessing the six domains, including acquiring and using information.[79] Additionally, the ALJ need not discuss all evidence presented to her, only evidence that she is rejecting.[80] Here, the ALJ did not reject the records.

Finally, the ALJ accounted for the assistance Plaintiff received in his IEP by noting that he received "passing grades with the assistance of IEP (resource room/class and tutoring)."[81] In sum, substantial evidence exists to support the ALJ's conclusion that Plaintiff has "less than marked" limitations in acquiring and using information.

### ii. *Attending and Completing Tasks*

In assessing this domain, the ALJ reviews how well Plaintiff is able to "focus and maintain . . . attention, and . . . begin, carry through, and finish" activities.[82] An adolescent should be capable of—among other things—paying attention to longer presentations and discussions, maintain concentration when reading text books, and maintain attention on tasks for extended periods of time.[83] A child who is limited in this domain may be easily distracted, slow to focus on or complete activities of interest to the child, get frustrated when giving up on tasks, or require extra supervision.[84]

---

[79]   AR 40 (citing 9F and 12F).
[80]   *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).
[81]   AR 40.
[82]   20 C.F.R. § 416.926a(h).
[83]   20 C.F.R. § 416.926a(h)(2)(v); SSR 09-4p.
[84]   *See* 20 C.F.R. § 416.926a(h)(3).

Substantial evidence exists to support the ALJ's finding that Plaintiff has "less than marked" limitations in attending and completing tasks. Dr. Ello, who treats Plaintiff for ADHD, remarked that Plaintiff has "less than marked" limitations in attending and completing tasks.[85] Dr. Steiner also opined that Plaintiff had "less than marked limitations," stating that Plaintiff exhibits good effort on tests and takes medication that helps significantly with his focus.[86] Dr. Steiner also stated Plaintiff's processing speed score in Dr. Marks' testing showed low-average functioning in concentration, which Dr. Steiner opined indicated "less than marked" limitations.[87]

Plaintiff's testimony also reflects an ability to concentrate on tasks of interest.[88] Plaintiff enjoys watching videos and reading lifestyle blogs on the internet and can do so for an extended period.[89] As stated previously, Plaintiff also enjoys reading novels and comic books at the library.[90] He generally uses his study hour at school appropriately by doing his homework, and states that he is rarely distracted during that time.[91] Further, Plaintiff's school records show good concentration in his courses, with one teacher remarking that "[Plaintiff] is an extremely hard worker which accounts for his high grade. He simply does not settle for mediocre work."[92]

---

[85] AR 511.
[86] AR 92.
[87] AR 92–93; *see also* AR 516.
[88] *See* 20 C.F.R. § 416.92a(h)(3)(ii).
[89] AR 112–13.
[90] AR 120.
[91] AR 114 (noting his being distracted during the study hour is an "exception").
[92] AR 388.

Plaintiff also stated that he was able to finish projects that he was interested in, although he could become frustrated if he did not finish.[93] He testified that if he became frustrated about not finishing a project, he would "normally just drop everything and try to forget it" and "go back to it the next day."[94] At home, Plaintiff states that although his mother may have to remind him about some tasks, he is good about regular grooming habits without needing reminders.[95] Substantial evidence from medical expert opinions and Plaintiff's testimony exist to support the ALJ's finding that Plaintiff has "less than marked" limitations in attending and completing tasks.

## B. The ALJ did not improperly reject the opinions provided by lay witnesses Sonia Portales, Tina Gore, and Mary Straub Walden.

Teachers and family members are not acceptable medical sources.[96] They are therefore considered "other" sources or "lay witnesses." "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."[97] The ALJ may not disregard competent lay witness testimony without comment and therefore must give specific, germane reasons for disregarding the testimony.[98] Inconsistency with medical evidence is a germane reason.[99] Further, an ALJ may accept parts of lay witness testimony that he feels are "consistent with the record of [Plaintiff's]

---

[93] AR 113–14; *see also* AR 118.
[94] AR 118.
[95] AR 115.
[96] 20 C.F.R. §§ 404.1502(a), 404.1513(a).
[97] *Molina*, 674 F.3d at 1114.
[98] *Id.*; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).
[99] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

activities and the objective evidence in the record," and may "reject portions of [lay witness] testimony that do not meet this standard."[100] The ALJ may also reject a lay witness opinion that contains an internal conflict.[101]

### i. *Sonia Portales*

The ALJ provided several germane reasons to assign little weight to Ms. Portales' testimony. The ALJ rejected her testimony because it was "not entirely consistent with clinical observations of medical professionals," and because it was "out of proportion to medical source evidence, and the claimant's own testimony."[102] Further, the ALJ reasoned that Plaintiff's care providers and school professionals "did not express concerns of the extent alleged."[103] These inconsistencies are germane reasons to reject lay witness testimony.[104]

The ALJ's reasoning is supported by substantial evidence in the record. The ALJ cited multiple instances where Ms. Portales' testimony conflicted with the evidence in the record, including Plaintiff's own testimony and school records. For example, the ALJ noted that Ms. Portales stated Plaintiff had limitations with his ability to read and understand books and comic books, making new friends, and generally get along well with adults.[105] However, Plaintiff testified that he enjoyed

---

[100] *Id.*
[101] *See Molina*, 674 F.3d at 1112.
[102] AR 37. Plaintiff takes issue with the ALJ's statement that Ms. Portales is "not a medical professional." *See* ECF No. 11 at 19; AR 37. However, the ALJ offered several other germane reasons for discounting Ms. Portales' testimony. *See* AR 37. Accordingly, the ALJ's statement that Ms. Portales was not a medical professional does not undermine the ALJ's analysis.
[103] AR 37.
[104] *See Bayliss*, 427 F.3d at 1218.
[105] AR 37; 301–02.

going to the library to read novels and comic books,[106] and his school records indicate he has several friends and a sense of humor.[107] He participates in the drama club and "Buddy Club," which assists students with disabilities,[108] and is perceived as polite and cooperative by adults.[109] Apart from these examples, the ALJ detailed many other inconsistencies with Ms. Portales' testimony throughout the ALJ's assessment of Plaintiff's six domains.[110] Because the ALJ provided germane reasons supported by substantial evidence, the ALJ appropriately discounted Ms. Portales' testimony.

### ii. *Tina Gore and Mary Straub Walden*

The ALJ presented specific and germane reasons for affording little weight to Ms. Gore's and Ms. Walden's testimony. The ALJ noted that Ms. Gore and Ms. Walden's assessments were more severe than Plaintiff's objective test results by Dr. Marks, "contradictory to his school records and IEP reports, and out of proportion to the allegations of [Plaintiff] and his mother."[111] All noted inconsistencies with the record are germane reasons to reject lay witness testimony.[112]

Substantial evidence exists to support the ALJ's reasons. Ms. Gore and Ms. Walden opined that Plaintiff had "extreme" and "marked" limitations respectively in acquiring and using information and attending and completing

---

[106] AR 120.
[107] *See, e.g.*, AR 374, 393.
[108] *See, e.g.*, AR 374, 393, 515.
[109] *See, e.g.*, AR 374, 519.
[110] *See* AR 39–47.
[111] AR 38–39.
[112] *Bayliss*, 427 F.3d at 1218.

tasks.[113] However, as analyzed *supra*, substantial evidence existed to support the ALJ's finding that Plaintiff had "less than marked" limitations in these areas. Accordingly, the ALJ did not err in rejecting Ms. Gore and Ms. Walden's testimony.

**C. The ALJ properly rejected the opinions of Nancy Winfrey, Ph.D. and state agency psychological consultants.**

   *i. Dr. Winfrey*

The ALJ properly discounted the opinion of consulting clinical psychologist Dr. Winfrey. A treating or examining physician is generally afforded greater deference than a non-treating and non-examining physician.[114] Further, "[t]he Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."[115]

Dr. Winfrey was neither a treating nor examining physician, therefore her opinion is not entitled to great deference.[116] Additionally, the ALJ referred to specific evidence in the medical record to reject Dr. Winfrey's opinion. [117] The ALJ stated that Dr. Winfrey's opinion that Plaintiff had "marked" limitations in acquiring and using information was "not supported by the objective testing" conducted by Dr. Marks.[118] In so doing, the ALJ specifically cited Dr. Marks' testing within the record.[119]

---

[113] AR 373, 376.
[114] *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).
[115] *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted).
[116] *See Lester*, 81 F.3d at 830–31. *See also* AR 636 (answering "no" to whether she had "ever personally examined [Plaintiff]").
[117] *Sousa*, 143 F.3d at 1244; *see* AR 39.
[118] AR 39.
[119] *Id.*

Finally, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."[120] Dr. Winfrey's allegation that Plaintiff may have "undiagnosed dyslexia and/or borderline verbal functioning" did not contain any supporting facts or analysis.[121] The ALJ therefore properly rejected this portion of Dr. Winfrey's testimony.[122]

### ii. State Agency Psychological Consultants

State agency medical and psychological consultants are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."[123] ALJs must consider their opinions and "articulate how they considered them in the decision."[124] To reject the opinion of a non-examining physician, the ALJ must refer to "specific evidence in the medical record."[125] However, the ALJ need not repeat the specific evidence in multiple parts of the opinion, so long as "the agency's path [of analysis] may reasonably be discerned."[126]

---

[120] *Bayliss*, 261 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

[121] AR 643.

[122] Plaintiff asserts that the ALJ failed to consider Woodcock-Johnson III test results when discounting Dr. Winfrey's opinion that Plaintiff had "marked" limitations in acquiring and using information, seemingly alleging they are at odds with Dr. Marks' testing. *See* ECF No. 11 at 14–15. However, Dr. Steiner testified that the "other tests in the record" that assessed "areas of concentration and intelligence" were consistent with the "less-than-marked" results of Dr. Marks' objective testing. AR 94–95. And, as discussed *supra*, the ALJ cited the records containing these tests when assessing Plaintiff's functioning in the six domains. *See, e.g.*, AR 39, 40, 43. Further, "in interpreting the evidence and developing the record, an ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations and internal quotations omitted). Accordingly, the ALJ did not improperly disregard the Woodcock-Johnson III testing when assigning little weight to Dr. Winfrey's opinion.

[123] SSR 17-2p.

[124] *Id.*

[125] *Sousa*, 143 F.3d at 1244.

[126] *Molina*, 674 F.3d at 1121 (internal quotations omitted).

The ALJ referred to specific evidence in the medical record to discount the opinions of the state agency consultants. The ALJ noted that the consultants' determinations were completed in 2014, and that "[a]dditional evidence received in the course of developing this case for review justifies different conclusions" than provided by the consultants.[127] Although the ALJ did not specify the "additional evidence" *within the same paragraph*, the Court may easily discern from the ALJ's decision the evidence upon which she relied.[128] For example, the objective medical testing by Dr. Marks was completed in June 2016,[129] treating physician Dr. Ello's assessment was taken in April 2016,[130] and Plaintiff's transcript in 2015 and 2016 reflected passing grades, including A's and B's.[131] As the ALJ specifically noted in her decision and as discussed *supra*, these pieces of evidence and Dr. Steiner's interpretations all conflicted with the consultants' conclusions that Plaintiff had "marked" limitations in his ability to acquire and use information.[132] Because the ALJ specified reasons supported by substantial evidence, the ALJ did not err in rejecting the state agency consultants' opinions.

### iii. *Harmless Error*

As the Commissioner notes, even if the ALJ did err in assigning weight to Dr. Winfrey or the consultants, the error would have been harmless. "ALJ errors in social security cases are harmless if they are inconsequential to the ultimate

---

[127] AR 38.
[128] *See Molina*, 674 F.3d at 1121.
[129] AR 514.
[130] AR 513.
[131] AR 359.
[132] *See* AR 38.

nondisability determination[.]"[133] Even if the ALJ had assigned significant weight to the opinions of Dr. Winfrey and the state agency doctors, the opinions would not have changed the ALJ's conclusion of non-disability. To find a child disabled the ALJ must find the child has "marked" limitations in two domains or "extreme" limitation in one.[134] The opinions by Dr. Winfrey and the state agency physicians only afforded Plaintiff "marked" limitation in one domain—acquiring and using information—and no "extreme" limitations. [135] Thus, even if the ALJ had afforded great weight to the opinions, the opinions would not have warranted a finding of disabled.[136] Any error in the ALJ's assignment of weight for Dr. Winfrey and the state agency consultants is therefore harmless.

## VI.   **CONCLUSION**

Having reviewed the ALJ's findings and the record as a whole, the Court concludes that the ALJ did not err in determining that Plaintiff's impairments did not equal a listing, rejecting lay witness testimony, or rejecting non-treating and non-examining consultant testimony.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

---

[133] *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (internal quotations omitted).
[134] 20 C.F.R. § 416.926a(d).
[135] *See* AR 133 (state agency doctor Beth Fitterer); 143 (state agency doctor Grant Gilbert); 640 (Nancy Winfrey).
[136] Plaintiff asserts that the Commissioner's argument stating the same is meritless because the ALJ improperly rejected the testimony of Plaintiff's teachers. ECF No. 13 at 3–4. He argues that the testimony from the teachers combined with the state agency opinions and interrogatories from Dr. Winfrey would have supported a finding of disabled. *Id.* However, as analyzed *supra*, the ALJ properly discounted the opinions of Plaintiff's teachers, who were the only witnesses that indicated a "marked" limitation in a domain other than acquiring and using information.

**2.** The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED.**

**3.** The Clerk's Office is to enter **JUDGMENT** in favor of Defendant.

**4.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, enter Judgment for the Plaintiff, provide copies to all counsel, and close the file.

**DATED** this 5th day of August 2019.


<u>    s/Edward F. Shea    </u>
EDWARD F. SHEA
Senior United States District Judge